.[No. 20505.　Department One.　July 24, 1928.]

THE STATE OF WASHINGTON, *Respondent*, v. JAMES
NICHOLS *et al., Defendants,* JAMES CAMPBELL,
*Appellant.*[1]

[1] CRIMINAL LAW (21)—PERSONS LIABLE—PRINCIPALS AND ACCES-
SORIES. · Where three boys were present at the scene of a burg-
lary in the second degree under Rem. Comp. Stat., § 2579, and
participating therein, the breaking by one was the act of each,
· · and all are principals; in view of Id., § 2260, abrogating the
distinction between principals and accessories, whether directly
committing or aiding or abetting the offense.

· Appeal from a judgment of the superior court for
Snohomish county, Bell, J., entered February 4, 1926,
upon a trial and conviction of burglary.　Affirmed.

*Coleman & Fogarty,* for appellant.

*Charles R. Denney,* for respondent.

MITCHELL, J.—The information in this case, charg-
ing defendants with the crime of burglary in the second
degree under Rem. Comp. Stat., § 2579 [P. C. § 8772],
alleged that James Nichols, James Campbell and Jerry
Kessner

".　.　. on or about the 30th day of October, 1925,
in Snohomish county, State of Washington, did feloni-
ously and unlawfully break and enter a store room of
the Longfellow Schoolhouse, the property of School
District No. 24, City of Everett, Snohomish County,
Washington, the said storeroom then and there being a
room in which goods, merchandise and valuable things
are kept on deposit, with intent then and there to com-
mit a larceny therein."

Campbell and Kessner were tried together.　Both
were found guilty by a jury, and Campbell has ap-
pealed from a judgment and sentence on the verdict.

¹Reported in 269 Pac. 337.

The questions raised by the appeal have been argued together, and for the consideration of them only a portion of the evidence need be noticed. In substance, it was as follows: The school building is in an isolated location in the outskirts of Everett. The storeroom door is reached from the outside by an open stairway to a landing about four by six feet surrounded by a railing. Shortly after nightfall, the defendants were seen passing by the building into the brush. A few minutes after going into the brush, they returned towards the building. The storeroom door was locked at that time. The caretaker of the school building testified:

"When I saw them coming, returning to the building, they were possibly sixty or sevent-five feet from the building, I went out the other side and came around on the east side of the building. When I came around to the east side of the ground, the southeast corner, I saw the three boys up on top of the stairs, with the store room door open. It is necessary to go up about twelve stairs to reach this door."

He further testified that one of the boys was standing partially inside the doorway. He took them to the police station.

[1] The argument on behalf of the appellant is that the proof failed to show that he performed the physical act of breaking or unlocking the door, and that therefore he was not a principal as charged, but at most only an accessory before the fact, and should have been informed against as such; that there was a fatal variance between the proof and pleading; and that his motion for a dismissal or for a directed verdict should have been granted.

Counsel rely on the doctrine announced in the case of *State v. Gifford,* 19 Wash. 464, 53 Pac. 709. In the earlier case of *State v. Duncan,* 7 Wash. 336, 35 Pac. 117, 38 Am. St. 888, it was held that, under the statute

abrogating the distinction between an accessory before the fact and a principal, a defendant may be convicted under an information charging him with the commission of a larceny as principal, although the evidence shows that he was not present at the time the taking was done, but advised and counseled it with the intention of receiving the benefits of the property taken. In the *Gifford* case, while it is true the court said the *Duncan* case ought to be overruled, that statement was modified by immediately saying

". . . and, in any event, it seems that it would be an inconsistent rule to apply to the case at bar."

That case was one in which, under the proof, it was impossible that the defendant, charged as a principal, could have committed the act upon which the crime charged had its foundation; hence the apparent departure from the *Duncan* case, out of respect for the general rule that the act or omission constituting the crime must be set forth in ordinary and concise language and in such manner as to enable a person of common understanding to know what is intended. It was shown that Gifford was only a procurer and was not present at the time the crime was committed, and that to avoid a positive conflict between the proof and pleading, under the particular circumstances of the case, and at the same time enable the defendant to know what was intended, that he should have been charged with the crime

" 'committed as follows: By procuring,' etc., instead of by alleging another and entirely different state of facts."

If one is charged with a criminal act which the state's proof shows it was impossible for him to have committed, he has nothing to answer, while if he committed a crime related to the one impossible for him to have

committed, the information should set out only what he did. The *Duncan* case was not that kind of a case nor is the present one.

Bishop on Criminal Law (9th ed.) at § 648, defines the two degrees of principals as follows:

"A principal of the first degree is one who does the act either in person or through an innocent agent.

"A principal of the second degree is one who is present lending his countenance, encouragement, or other mental aid while another does the act. . . ."

The author then says:

"The distinction between the two degrees is without practical effect. It originated in this way: by the ancient law, those only were principals who are now such in the first degree, persons present and abetting being accessories. When afterward the courts held the latter to be principals, they termed them of the second degree. Now an indictment against one as principal of the first degree is sustained by proof of his being such of the second, and an indictment against one as principal of the second degree is supported by proof that he is of the first. The distinction is in all respects without a difference; and there is no practical reason for retaining it in expositions of the common law."

Many cases, English and American, are cited in support of the text.

Keeping step with the modern progress in the exposition of the common law on the subject, our statute, Rem. Comp. Stat., § 2260 [P. C. § 8695], abrogates the distinction. So far as the present case is concerned, that statute provides that every person concerned in the commission of a felony, gross misdemeanor or misdemeanor, whether he directly commits the act constituting the offense, or aids or abets in its commission, and whether present or absent, is a principal and shall be proceeded against and punished as such.

Here the three boys were engaged in a common escapade. All were immediately at the scene of the crime. The breaking by one was the act of each, so far as the matters of pleading and proof are concerned. All of them were principals. There was no variance between the pleading and proof. Appellant's motions were properly denied. This decision is in harmony with our recent cases. *State v. Malsogoff,* 88 Wash. 419, 153 Pac. 379 (wherein the *Gifford* case was distinguished); *State v. Vane,* 105 Wash. 421, 178 Pac. 456; *State v. Brummett,* 116 Wash. 407, 199 Pac. 726; *State v. Ikeda,* 130 Wash. 325, 227 Pac. 14; *State v. Anderson,* 132 Wash. 551, 232 Pac. 275; *State v. Pielow,* 141 Wash. 302, 251 Pac. 586.

Affirmed.

FULLERTON, C. J., FRENCH, TOLMAN and PARKER, JJ., concur.