[No. 15104. Department One. January 9, 1919.]

THE STATE OF WASHINGTON, *Respondent*, v.
NOAH O. HOYER, *Appellant*.[1]

HOMICIDE (5, 6)—MANSLAUGHTER—ELEMENTS—KILLING WITH DE-
SIGN—STATUTES. Under Rem. Code, §§ 2392-2395, defining murder in
the first degree as the killing with premeditated design to effect the
death of the person killed, murder in the second degree as the kill-
ing with such design but without premeditation, and manslaughter
as every other killing not excusable or justifiable, killing with a
design to effect death is murder and the element of manslaughter is
excluded, even if under provocation or sudden heat of passion.

HOMICIDE (111)—INSTRUCTIONS—SELF-DEFENSE. Upon an issue as
to self-defense, an instruction that before the killing there must
have been some overt act of the person killed, is not erroneous in
failing to use the words "assault with the naked fist," where there
was no dispute as to the deceased's having used his hands only in
the immediately preceding encounter, in view of proper following
instructions from which the jury could not have been misled by
the words "overt act."

SAME (111). In a prosecution for murder where there was evi-
dence that accused armed himself and then provoked an attack and
shot the deceased, it is proper to instruct that the right of self-
defense is allowed as a shield and not a sword, and that a person
must act honestly and not provoke an attack as an excuse for kill-
ing.

SAME (38)—EVIDENCE—ADMISSIBILITY—PREVIOUS QUARRELS. In a
prosecution for murder, evidence as to the details of previous quar-
rels and ill-feeling is admissible to show motive.

Appeal from a judgment of the superior court for
Pend Oreille county, Carey, J., entered January 19,
1918, upon a trial and conviction of murder. Affirmed.

*E. L. Sheldon* and *L. C. Jesseph*, for appellant.

*Chas. H. Leavy*, for respondent.

TOLMAN, J.—This is an appeal from a conviction of
murder in the first degree; and error is assigned be-

[1]Reported in 177 Pac. 683.

cause of instructions to the jury given and refused by the trial court, the refusal to grant a new trial, and the admission of evidence as to the details of the quarrels between appellant and deceased which preceded the homicide.

The first and principal contention is that the trial court, in his instructions, defined the voluntary killing of another upon sudden heat as murder in the second degree instead of manslaughter. We have so recently fully considered and passed upon this identical question in *State v. Palmer*, 104 Wash. 396, 176 Pac. 547, that it seems wholly unnecessary to again enter into a discussion of the question; and since the instruction given by the court upon this subject is entirely in harmony with our views as expressed in the *Palmer* case, the matter need not be further treated.

The appellant sought to justify the homicide upon the ground that it was committed in self-defense, and, as is usual in cases of this kind, the evidence was conflicting. The state's evidence tended to show a series of quarrels between appellant and the deceased produced mainly by jealousy, resulting in a number of personal encounters, followed by numerous threats on the part of appellant to kill the deceased; and also it was the theory of the state, and its evidence tended to show, that the final quarrel was instigated by appellant at a time when he was armed, in order that he might carry out his design to kill under conditions which would furnish evidence that he acted in self-defense. The appellant's evidence, on the other hand, tended to show that the deceased, who was a very much larger and stronger man than he, had for a number of years, for little or no cause or reason, followed the practice of beating or knocking him down at frequent intervals; that appellant had learned by ex-

perience that he was no match physically for deceased; that he did not seek the quarrel which ended in the tragedy, or any of the quarrels, but that each and all of them were forced upon him by the deceased, and in the final encounter, after having used his best efforts unavailingly to escape, he drew the revolver, which he had carried for some days in his coat pocket, as he says for the purpose of killing cats which molested his chickens, and believing himself in imminent danger of great personal injury, he fired the shot which caused the death of his assailant. This evidence called for an instruction as to the law of self-defense, and the court gave an instruction which very fully covers the subject. Appellant's proposed instruction upon the law of self-defense was refused, and this giving and refusing is complained of.

The instruction given by the court fairly stated the law and, as a whole, was fully as favorable to appellant as the one refused. The only material differences between the two instructions are: First: The instruction given does not in terms use the words "assault with the naked fist," in describing the act on the part of the person killed, but instead says: "There must be, or reasonably appear to be, at or immediately before the killing, some overt act of the person killed, etc." Since there is no dispute in the testimony as to the deceased having used his hands, and his hands only, in the encounter which immediately preceded the killing, the expression used and the one refused necessarily mean the same thing in this particular case; and the jury having been properly instructed that if appellant had reasonable cause to believe, and did believe, that deceased was about to inflict upon him great personal injury, or take his life, the killing would be justifiable, could not have misunderstood what was meant by the words "overt act."

Second: To the instruction given was appended a paragraph not included in the instruction refused, which reads:

"The right of self-defense is allowed to every person, as a shield and not as a sword, and in the exercise of this right a person must act honestly and in good faith. A person when assaulted may exercise a reasonable force to repel an attack, but must not provoke an attack in order that he may have an apparent excuse for killing his adversary."

Since it was the theory of the state that appellant armed himself and then provoked the attack, and there was evidence to support that theory, this instruction was properly given. *State v. Hawkins,* 89 Wash. 449, 154 Pac. 827.

Nor do we find any error in the admission of testimony as to the details of the quarrels which preceded the homicide. Evidence of previous quarrels and ill-feeling is admissible to show motive. *State v. Churchill,* 52 Wash. 210, 100 Pac. 309; 21 Cyc. 915; 13 R. C. L. 910.

We find no error in the record, and the judgment is therefore affirmed.

MAIN, C. J., MACKINTOSH, MITCHELL, and CHADWICK, JJ., concur.